598 So.2d 561 (1992)
STATE of Louisiana
v.
Erskine J. WRIGHT.
No. 90-KA-1712.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 1992.
*562 Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for plaintiff/ appellant.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant/appellee.
Before BARRY, BYRNES and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Defendant Erskine J. Wright was charged by bill of information with the forcible rape of a thirteen year old female, a violation of La.R.S. 14:42.1. After a trial the jury found defendant guilty as charged. On July 5, 1990, the trial court heard defendant's motion for new trial, which included the recanted testimony of the victim as well as new testimony from the victim's mother and another person. The trial court denied defendant's motion, and he was sentenced to serve twenty years at hard labor without the benefit of probation, parole or suspension of sentence. Defendant now appeals.
On August 17, 1989, the thirteen year old victim was babysitting for Zelda Guss at the Guss residence.[1] According to the trial transcript, Ms. Guss discovered a gas leak in her home and, consequently, called NOPSI for a home inspection. In addition to calling the utility company, Ms. Guss contacted defendant and requested that he come to her house and wait for the serviceman. While the victim babysat the Guss children, Leslie Williams (the victim's sister) and Zelda Guss made two trips between the Williams and Guss homes, leaving the victim alone with defendant.
At trial, the victim testified that during the time in which Leslie and Zelda were gone, defendant entered the room where she and the Guss children were watching television and told her to accompany him to the next room. Upon entering the room, defendant closed the bedroom door and then "started touching [the victim] all over and kissing all over [her] ... trying to raise [her] clothes up." Defendant then climbed on top of the victim and held both of her hands, so that her arms were stretched out over her head.
When the victim attempted to get away from defendant, he responded: "Stop moving girl. You making me mad." The victim testified that she was too scared to fight; nonetheless, she attempted to move his hands away from her pants. Finally, defendant removed her pants, "put his hands all in [her] draws" [sic], and "put his thing in [her]." At some point during the course of these events, six year old Matika Guss walked into the room and was immediately told to leave by defendant. Defendant stopped when someone apparently came into the house, and the victim was instructed to get dressed and to stay in the room. Because she was scared, the victim complied.
Although the victim did not immediately tell her mother about the attack, she recounted the incident to her sister, Leslie. Several weeks later, the victim informed her mother, and the police were summoned. She was eventually taken to Charity Hospital for an examination even though the alleged rape had occurred one month prior. This examination presented physical findings that were neither consistent with nor inconsistent with the alleged rape.
In rebuttal, defendant testified that he had no sexual relations with the victim. He further testified that Leslie and Zelda returned to the Guss house several times while he was there.[2] Outside of the presence of the jury, the court found six year old Matika Guss competent to testify as a rebuttal witness; however, the prosecution declined to call her to the stand because she informed the court that she had been told what to say.
At the hearing on defendant's motion for new trial, testimony was received from the *563 victim, Verlie Williams (the victim's mother) and Zelda Guss. In the course of her trial testimony, the victim maintained that she did not want to have sex with defendant. However, at the post-trial motion hearing she recanted this testimony by stating that defendant did not force or threaten her. In addition, the victim stated that Zelda Guss had instructed her to testify at trial that she was forced and/or threatened by defendant to submit to sexual intercourse. However, Ms. Guss testified that she never told the victim what she should say at trial. Guss further testified the victim told her that although she was not ready to have sex with defendant, she was not forced or threatened; she simply "let him do it."
During the examination of Verlie Williams, she stated that defendant's mother, Mazie Wright, had spoken to the victim, asking her "to tell the truth." But, Mrs. Williams also stated that the victim had been made plainly aware that defendant would be subjected to a lengthy prison sentence if convicted. According to Mrs. Williams, this information was the source of much guilt for the victim.
Considering all of the purported new evidence, the trial court denied defendant's motion for new trial.
Errors Patent:
A review of the record for errors patent reveals none.
Assignment of Error No. 1:
By his first assignment of error, defendant argues that the trial court erred in denying his motion for new trial by failing to consider the new evidence offered through the testimony of the three witnesses.
La.C.Cr.P. art. 851 provides that, on motion of a defendant, a court "shall grant a new trial whenever:"
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would have probably changed the verdict or judgment of guilty.
The Louisiana Supreme Court addressed the issue of new evidence warranting a new trial in State v. Molinario, 400 So.2d 596 (1981). The court pronounced the test as being not whether another jury might bring a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. See also State v. Bagley, 378 So.2d 1356 (La.1979); State v. Williams, 362 So.2d 530 (La.1978). On review, an appellate court cannot disturb a trial court's denial of a motion for new trial based upon newly discovered evidence unless it is shown that the court's "denial of the motion was arbitrary and a palpable abuse" of its "broad discretion." State v. Tyler, 342 So.2d 574 (La.1977), cert. den., 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977); State v. Randolph, 275 So.2d 174 (La.1973).
In the instant case, at the hearing on the motion for new trial, the trial court was confronted with accepting the testimony of Zelda Guss or the recanted testimony of the victima credibility question. The Louisiana Supreme Court has stated: "where credibility is involved the trier of fact is undoubtedly better situated to make the determination...." State v. Tyler, supra.
The following important facts have been revealed in the course of defendant's trial and motion hearing: (1) Zelda Guss has had a intimate, sexual relationship with defendant; (2) the victim stated that she testified that Zelda Guss instructed her to testify that the defendant forced her to engage in sexual intercourse; (3) the victim is a child of thirteen years of age; (4) Zelda Guss denied ever having told the victim to testify that defendant's acts were accompanied by force or threats; and (5) defendant's mother spoke to the victim at length regarding the victim's trial testimony.
Defendant claims that the victim's testimony at the motion hearing was not a "recantation," but rather a "reversion" to her original statement to Ms. Guss. Thus, defendant claims that the victim's statements *564 had merely come full circle (i.e., that while she may not have been ready to have sex with defendant, she was not forced or threatened). Although defendant suggests that the victim's motive for testifying at the motion hearing may have been grounded in pity, he also suggests that it may have been guilt or remorse for lying at trial.
It is a well-established principle of Louisiana law that:
[R]ecantations are highly suspicious and, except in rare circumstances, a motion for new trial should not be granted on the basis of a recantation since that disclaimer is tantamount to an admission of perjury so as to discredit the witness at a later trial.
State v. Prudholm, 446 So.2d 729 (La. 1984); See State v. Ward, 542 So.2d 737 (La.App. 4th Cir.1989); State v. Gray, 526 So.2d 1268 (La.App. 3d Cir.1988), writ den., 531 So.2d 468 (La.1988); State v. Tyler, supra, 342 So.2d at 588; State v. Linkletter, 345 So.2d 452 (La.1977), cert. den., 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978); see also, U.S. v. Johnson, 487 F.2d 1278 (4th Cir.1973); Larrison v. U.S., 24 F.2d 82 (7th Cir.1928).
Considering that the only "new" evidence centered on recanted testimony, the trial judge's application of La.C.Cr.P. art. 851 to this "new" evidence is entitled to great weight. We are unable to say that the denial of the motion for new trial was arbitrary and a palpable abuse of the trial court's broad discretion.
We find no merit to this assignment of error.
Assignment of Error No. 2:
Defendant next argues that the evidence was insufficient to support his conviction. In reviewing a record for sufficiency of the evidence an appellate court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988).
La.R.S. 14:42.1 defines forcible rape as:
[A] rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under the circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Consequently, in a charge of forcible rape, the State has the burden of proving that: (1) anal or vaginal sexual intercourse occurred (any degree of penetration being sufficient to complete the crime);[3] (2) without the lawful consent of the victim; (3) the victim was prevented from resisting by force or threats of physical violence; and (4) the victim reasonably believed that such resistance would not prevent the rape. See State v. Richardson, 425 So.2d 1228 (La.1983). In the instant case, defendant maintains that the prosecution failed to prove that intercourse occurred and/or that the victim was prevented from resisting by force or threats of force.
There was conflicting testimony as to whether sexual intercourse actually occurred. The victim stated that defendant "put his thing" in her; defendant testified that he never had any sexual relations with the victim. In addition to the victim's testimony regarding the rape, Leslie Williams testified that upon her return to the Guss home, she noticed immediately that the victim "wasn't acting normal" and seemed "quiet." Upon questioning the victim, she confided to her sister that defendant "had been fooling around with her and that she had been bleeding."
Although defendant argues that there was no physical evidence (including the victim's medical examination) sufficient to prove an act of intercourse, it is well-settled that the testimony of the victim in a *565 rape case is sufficient to prove the elements of the offense.[4]State v. Brown, 546 So.2d 1265 (La.App. 1st Cir.1989); State v. Doby, 540 So.2d 1008 (La.App.2d Cir.1989), writ den., 544 So.2d 398 (La. 1989); State v. Kitchen, 504 So.2d 1129 (La.App. 5th Cir.1987); State v. Johnson, 446 So.2d 1371 (La.App. 1st Cir.1984), writ den., 449 So.2d 1347 (La.1984); State v. Rives, 407 So.2d 1195 (La.1981).
Defendant also maintains the State failed to prove that the victim was prevented, by force and/or threats, from resisting the alleged act of intercourse. As to the victim's state of mind, the victim testified at trial that she considered defendant to be an adult, and not a playmate. Thus, when she was told by this "adult" to accompany him into another room, she complied. The victim further testified that this "adult" touched and kissed her all over, attempted to raise up her clothes, climbed on top of her, and held her arms over her head. In addition, the victim testified that when she attempted to push defendant away, he told her to stop moving, that she was angering him. Testimony also established that the victim was too scared to fight defendant. Further, the victim testified that she attempted to move defendant's hands away from her pants as he was trying to remove them.
In Louisiana, forcible rape convictions have been affirmed in situations similar to the instant case. In State v. Brown, 508 So.2d 118 (La.App. 4th Cir.1987), writ den., 513 So.2d 1205 (La.1987), this court affirmed the forcible rape convictions of two defendants. Both defendants were unarmed when they abducted the victim. At trial, the victim testified that she was scared and, therefore, was forced to submit to intercourse with both defendants.
In State v. Hawkins, 504 So.2d 1132 (La. App. 5th Cir.1987), the defendant was convicted of forcible rape largely on the the testimony of his thirteen year old victim. In Hawkins, the victim testified that the defendant forced him to go inside of the defendant's apartment where, subsequently, the defendant locked the door, undressed the youth, and sodomized him. Trial testimony revealed that the victim was afraid, and at no time did he encourage the defendant or consent to anal intercourse.
In both of these cases, the evidence regarding the element of force and the subjective state of mind of the victims, when viewed together with all of the other evidence, was sufficient to support convictions for forcible rape.
In the instant case, viewing all of the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of forcible rape, La.R.S. 14:42.1, beyond a reasonable doubt.
For the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Ms. Guss was a mutual friend of both the Williams family and Erskine J. Wright. Moreover, trial testimony revealed that Ms. Guss also had an "intimate" relationship with the defendant.
[2] This testimony was consistent with both the testimony of Leslie Williams and Zelda Guss.
[3] La.R.S. 14:41(B) provides:

Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
[4] According to the trial testimony of Dr. Spence Willis, a resident at Charity Hospital emergency room who examined the victim, because this incident had allegedly occurred one month prior to his examination of the victim, any seminal fluid that may have been present at that time would not have been present at the time of the examination.