624 So.2d 916 (1993)
STATE of Louisiana
v.
Charles D. FONTAN, Jr.
No. 92-KA-2355.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1993.
*917 Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for plaintiff.
Nick F. Noriea, Jr., Gainsburgh, Benjamin, Fallon David & Ates, New Orleans, for defendant.
Before KLEES, ARMSTRONG and WALTZER, JJ.
ARMSTRONG, Judge.
On May 8, 1991, the defendant, Charles D. Fontan, Jr., was charged by bill of information with forcible rape and second degree kidnapping. R.S. 14:42.1; 14:44.1. He was arraigned May 16, 1991 and pled not guilty. The trial judge found him guilty as charged November 20, 1991. His trial counsel withdrew, and new counsel filed a motion for new trial January 8, 1992 which was denied April 13, 1992. He was sentenced July 1, 1992 to ten years at hard labor with the first two to be served without benefit of parole, probation or suspension of sentence on each count. The sentences are to be served concurrently.
At trial the seventeen year old victim testified that on January 14, 1991, at approximately 9:30 a.m., she was at the Jackson Avenue ferry landing waiting for her boyfriend. She waited downstairs for the ferry for fifteen to twenty minutes. During that time, she saw the defendant drive up in a burgundy Chevrolet Caprice with a gold stripe on the side, go upstairs to the enclosed ferry waiting area, and return within seconds. He waved to her, got into his car and drove away. He passed by her several more times in his car. The victim intermittently went upstairs to the waiting area to see if the ferry was coming. On one trip, she left her jacket downstairs on a bench. When she came back downstairs the jacket was missing. *918 The defendant drove up and asked her if she had lost something. She said she had, and he held up her jacket. He threw the jacket into the back seat of the car and told her to come get it. She went to the passenger side of the car, but both doors were locked. She went around the car and opened the rear driver's side door. A baby seat was in the back seat. The victim tried to reach across it to retrieve her jacket. She had one foot in the car and one foot outside when the defendant sped off. He ordered her to put the jacket over her head. She refused, and the defendant slapped her. She then put the jacket over her head. The defendant drove to a location unknown to the victim. It appeared to her to be along the river inside the flood wall. He ordered her to take off her clothes. She refused, and the defendant then ripped her shirt. The victim closed her eyes. The defendant then pulled her pants down to her knees, ripped her underwear, and placed his penis into her vagina. The victim was frightened to resist for fear of what the substantially larger defendant might do. The defendant then drove the victim back to the ferry landing. Once there, the defendant passed once or twice in his car, and the victim was able to note the license plate. She asked a woman nearby what time it was and the woman responded 10:15. The victim then took the ferry over to her boyfriend's school. She told him about the events. The two of them then went to the victim's mother's workplace and told her. She then went to Charity Hospital.
Later, she identified the defendant in a photographic lineup.
Dr. Leslie Greco examined the victim. She found blood in the victim's vaginal area. The area was tender and irritated, and there were indications of spermatozoa. She took swabs and forwarded them to the Crime Lab. The specimens were negative for spermatozoa.
Detective Reginald Williams, NOPD, met with the victim at Charity. She described the perpetrator as a white male, receding hairline, wearing what appeared to be a security guard uniform: blue pants, light blue shirt with a badge. She described the car and gave him the license plate number. The number the victim gave him was assigned to a Buick. He discovered that the last number was wrong, and found a car matching the description given him by the victim. He obtained the address of the registered owner, Charles Fontan. He went to the defendant's address and observed the car with a baby seat in the back seat. Williams contacted the Department of Motor Vehicles and obtained the driver's license photograph of the defendant. Because that photograph was in black and white, Williams converted five Bureau of Identification photographs to black and white and presented the lineup to the victim whereupon she chose the photograph of the defendant. Williams obtained an arrest warrant and executed it on the defendant at the RTA bus barn where the defendant works as a bus driver. The defendant was advised of his Miranda rights twice. On the way to Central Lock-up, the defendant made two statements. First, he asked whether the victim had had a medical examination and then said he could prove his innocence because he had had a vasectomy and could not have had sperm in his ejaculate. Then, he said that "he got along real well with blacks." The defendant was wearing the RTA uniform at the time of his arrest: navy blue pants, light blue shirt with RTA emblem.
On cross-examination, Williams testified he thought the rape occurred at 10:30 a.m. He said the victim was not sure of the last numeral on the license plate, and that as to the second numeral, he substituted the numeral "3" for the numeral "8" the victim had reported.
The defendant testified he worked on the morning of the crime from 5:38 a.m. to 9:36 a.m. driving a route in Algiers. The defense introduced his work assignment sheet to prove that fact. He then went to his bank a few blocks from the Arabella Street bus barn and withdrew $20.00. The defense introduced records of the bank transaction at 9:44 a.m. He said he often drops drivers off at the Jackson Avenue ferry landing in his car, and that he passes the landing four times a day. He said that on the day of the crime, he passed the landing on the way to his credit union downtown. He testified he had had a vasectomy.

*919 ERRORS PATENT

A review of the record reflects that there are no errors patent.

ASSIGNMENTS OF ERROR ONE, TWO, AND THREE:
The defendant argues his trial counsel was ineffective because he did not call alibi witnesses; that the trial court erred in denying his motion for new trial based on the verdict being contrary to the evidence after the court heard the alibi evidence; and that the evidence, when considered in light of the alibi evidence, was insufficient.
At the hearing on the motion for new trial, Mark Rosa, President of the New Orleans Municipal Employees' Credit Union, testified his records revealed there was a withdrawal from the defendant's account at 10:42 a.m. on the morning of the crime at the branch office in City Hall. Frank Echols, Superintendent of Station Operation at Arabella Station, testified the defendant was working, driving a bus in Algiers from 6:00 a.m. to 9:38 a.m. Pamela Gill testified that on the morning of the crime she was working at her job as parking lot cashier at the Superdome from 9:00 a.m. to 1:00 p.m. She said that she fills in for the other cashier "Barbara" when Barbara is on lunch break between 10:00 a.m. and 11:00 a.m. Shortly after 10:00 a.m., the defendant walked in and asked for Barbara. He appeared calm. Since Barbara had just left, he and Gill spoke for as long as thirty minutes. He then left to go to his credit union across the street.
The state called the defense trial attorney who testified he was aware that the defendant had gone to the credit union on the morning of the crime. He said that his research revealed that a transaction occurred at the credit union at 10:40 a.m. Since the transaction occurred after the time the victim reported the crime occurred, the attorney did not consider the transaction relevant alibi evidence. On cross, the attorney said that his office had contacted Gill and that he did not call her at trial because she reported seeing the defendant after 10:15 a.m., which was after the time period the victim said the crime occurred. If he had known that she would testify that she saw the defendant at 10:05 a.m., he would have called her at trial. He admitted he was tired the day of trial because he was trying a second degree murder case in another section of court.
A defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La. 1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 694, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post-conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Leroy Johnson, 619 So.2d 1102 (La.App. 4th Cir.1993). However, the court may address the issue on appeal if the record is sufficiently complete. Here, the claim of ineffective assistance of counsel is based on the failure of trial counsel to call alibi witnesses. The witnesses testified at the hearing on the motion for new trial. That hearing has been transcribed, and the transcript is contained in the record for this court's review. Accordingly, it appears this court may review the issue on appeal.
The motion for new trial was argued on the basis that the verdict was contrary *920 to the law and evidence. C.Cr.P. art. 851(1). Thus, if the evidence was sufficient, the motion for new trial was correctly denied. The standard for an appellate review of the sufficiency of evidence to support a defendant's conviction was set forth in State v. Heck, 560 So.2d 611, 614-615 (La.App. 4th Cir.1990), writ den. 566 So.2d 395 (La.1990):
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 [61 L.Ed.2d 560] (1979); State v. Jacobs, 504 So.2d 817 (La.1987). Where the conviction is based upon circumstantial evidence, R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Langford, 483 So.2d 979 (La.1986). R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985).
Here, the defendant was found guilty as charged pursuant to forcible rape and second degree kidnapping. The essential elements of forcible rape include: 1) an act of anal or vaginal sexual intercourse; 2) without the lawful consent of the victim; and, 3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. Emission is not necessary and any sexual penetration, however slight, is sufficient to complete the crime. R.S. 14:41(B); State v. Wright, 598 So.2d 561 (La. App. 4th Cir.1992).
In State v. Wright, this court found that the victim was prevented by force or threat of the defendant from resisting the intercourse. In that case, the thirteen year old victim testified that the defendant touched and kissed her all over, attempted to raise her clothes and climb on top of her, held her arms over her head, and that she angered the defendant when she attempted to push him away. The victim also testified that she was too scared to fight the defendant.
This court affirmed forcible rape convictions of two defendants, even though both were unarmed when they abducted the victim. State v. Brown, 508 So.2d 118 (La.App. 4th Cir.1987). At trial, the victim testified that she was scared and, therefore, forced to submit to intercourse with both defendants.
In State v. Hawkins, 504 So.2d 1132 (La. App. 5th Cir.1987), the victim testified that the defendant forced him to go inside the defendant's apartment where subsequently the defendant locked the door, undressed the victim, and sodomized him. The victim testified that he was afraid, and that he at no time encouraged the defendant nor consented to anal intercourse. The defendant's conviction for forcible rape was upheld.
It is well settled that the testimony of a rape victim alone may be sufficient to prove every essential element of the crime. State v. Wright, 598 So.2d 561 (La.App. 4th Cir.1992) (and cases cited therein). In this case, the defendant drove off, after luring the victim to his car, while she was still partially outside the car. He slapped her. She said she refused to take off her clothes when the defendant ordered her to, and that he then ripped them off of her. She told him not to have intercourse with her. She said she was scared. The testimony of the victim in the present case establishes that vaginal sexual intercourse occurred between the defendant and the victim without the victim's consent when the victim was prevented from resisting by force or threats of physical violence and the victim reasonably believed that such resistance would not prevent the rape. These facts are sufficient to support a conviction for forcible rape.
The essential elements of second degree kidnapping are: 1) the forcible seizing and carrying of any person from one place to another 2) wherein the victim is sexually abused. R.S. 14:44.1 A(3) B(1). Here, the victim testified the defendant sped away as she tried to reach into his car to retrieve her jacket and that he drove her to a place somewhere upriver. As set out above, the evidence was sufficient to show that the victim *921 was sexually abused. Accordingly, the evidence was sufficient to support a conviction for second degree kidnapping.
The defendant suggests that the trial court should have considered that the testimony of the alibi witnesses established that the defendant could not have been at the crime scene during the commission of the crime. However, the only witness that testified she saw the defendant during the time period the victim said the crime occurred was Pamela Gill who testified she saw him at 10:05 a.m. She in fact first reported to the defendant's counsel that she had not seen him until 10:15 a.m. which would have been after the victim had already been dropped off. Moreover, the other evidence against the defendant was overwhelming: the victim gave an accurate description of the defendant including his uniform; she gave a detailed, accurate description of the car including the burgundy color, the gold stripe, the Chevrolet make, the Caprice model, and the baby seat in the back seat; and she was able to make a positive identification of the defendant in a photographic lineup. It is well settled that the determination of the credibility of witnesses is left to the broad discretion of the trial court. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Crockett, 583 So.2d 593 (La.App. 4th Cir.1991); State v. Burger, 550 So.2d 1282 (La.App. 4th Cir.1989). In the present case the trial court evidently found the victim's testimony more credible than Gill's testimony.
These assignments are without merit.

ASSIGNMENT OF ERROR FOUR:
The defendant argues his sentence was excessive.
However, the defendant did not file a motion to reconsider sentence as required by C.Cr.P. art. 881.1. Therefore, he is precluded from raising the issue on appeal. State v. Bernard Lee, 618 So.2d 551 (La.App. 4th Cir.1993).
For the foregoing reasons defendant's conviction and sentence are affirmed.
AFFIRMED.