NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1238

STATE OF LOUISIANA

VERSUS

KEVIN JAMES DALCOURT

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR-122023
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.

AFFIRMED.

Alfred F. Boustany, II
Attorney At Law
P. O. Box 4626
Lafayette, LA 70502
(337) 261-0225
COUNSEL FOR DEFENDANT/APPELLANT:
    Kevin James Dalcourt

**Michele S. Billeaud**
**Assistant District Attorney**
**Fifteenth Judicial District Court**
**800 South Buchanan Street**
**Lafayette, LA 70501**
**(337) 262-1057**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**DECUIR, Judge.**

Defendant was charged by bill of information with forcible rape, a violation of La.R.S. 14:42.1. A jury found Defendant guilty, and he was sentenced to ten years at hard labor, with the first five years to be served without the benefit of probation, suspension of sentence, or parole, and with credit for time served.

Defendant appealed, alleging eight assignments of error.

## FACTS

On the evening of October 11, 2008, Defendant had anal intercourse with L.R., a mentally challenged fifteen-year-old girl, without her consent, using intimidation and force.[1]

## ASSIGNMENT OF ERROR NUMBER SEVEN

In his seventh assignment of error, Defendant argues that the verdict was contrary to the law and evidence. Defendant also argues the bill of information was defective in that it did not allege essential facts on which the charge was based and, therefore, inhibited his ability to adequately prepare a defense. By these assignments, Defendant contends the evidence was insufficient to support his conviction.

The time for testing the sufficiency of the bill of information was prior to trial by a motion to quash or by a motion for a bill of particulars. *State v. Draughn,* 05-1825 (La. 1/17/07), 950 So.2d 583, *cert. denied,* 552 U.S. 1012, 128 S.Ct. 537 (2007). An omission of an essential fact in an indictment does not necessarily create a prejudicial error because such facts can be supplied during discovery. *State v. Johnson*, 02-254 (La.App. 5 Cir. 6/26/02), 822 So.2d

---

[1]The initials of the victim and her family are used to protect her identity. La.R.S. 46:1844(W).

840. The record shows that Defendant never filed a motion to quash the bill of information for an alleged defect. Moreover, the record indicates that several months prior to trial, Defendant received discovery from the State regarding the manner in which Defendant was alleged to have committed the act of forcible rape.

Defendant also argues the evidence did not establish the essential element of force, that the victim "never testified that she reasonably believed that resistance would not prevent a rape."

The standard of review in sufficiency of the evidence claims is well settled. An appellate court must view the evidence in the light most favorable for the prosecution and not disturb the ruling of the trial court unless no rational trier of fact could reach the trial court's conclusion. *State v. Macon*, 06-481 (La. 6/1/07), 957 So.2d 1280.

In *State v. Schexnaider*, 03-144, p. 10 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 457, this court set forth the elements required by La.R.S. 14:42.1 that the State must prove to support a conviction of forcible rape:

> [I]n order to convict the Defendant, the State had the burden of proving: (1) an act of vaginal or anal intercourse; (2) without the lawful consent of the victim; and (3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

In the present case, the victim suffered from a mental cognitive disability. On October 11, 2008, Defendant and an employee, Ms. Nat, picked up the victim, L.R., her brother, I.F., and their sister, A.F., from their home and took them to Defendant's restaurant. I.F. was thirteen years old at the time and A.F. was twelve. The children regularly went to the restaurant to eat and helped out around the restaurant after school and during the summer time. In addition, the

2

victim helped sell snowballs from a snowball stand and beauty salon owned by Defendant's wife. Later in the evening, I.F. and A.F. began playing on two laptop computers in the restaurant. The victim asked Defendant if she could play on the computer in his office, which was located in the back room of the beauty salon.

Shortly after she began playing on the computer, the victim testified that Defendant came and stood beside her and asked for a hug. She said she was frightened by the request and told him no. Defendant left the office but quickly returned and sat on a sofa in the office. He asked her again for a hug. Again, she told him no. The third time he asked, however, she went over to him and hugged him. She stated that he then pulled down her pants. She said that she did not say anything to him because she was scared. He got up and went into the salon area, locked the front door, and got a clear bottle containing a lotion or oil. The victim stated that when he left, she pulled up her pants, but when he returned, he again pulled them down. She pulled her pants back up and started to walk out of the office but he turned her around and made her walk back to the sofa. She stated that he bent her over the sofa, pulled down her pants, oiled his "private part," and put his penis into her rectum. She stated that during this time, he also put his finger into her vagina. The victim testified that she did not resist or tell Defendant no because she was scared and did not think she could get away because he was physically on her. The victim testified that she was crying during the encounter.

During this time, there was a knock at the salon door, which was ignored by Defendant. The victim testified she did not yell out because she did not think she would have been heard. However, shortly thereafter came another knock at the door and Defendant stopped, pulled up his pants, and opened the

3

door. It was the victim's brother. The victim testified that she pulled up her pants and went back to the computer. Then, with her brother, she went back to the restaurant. There, they finished cleaning up. She stated Defendant told her "Do you know what we just did grown-ups do[?]" and asked her if they could do it again. She told him, "No." He then gave her money.

In *State v. Polizzi,* 05-478 (La.App. 5 Cir. 2/14/06), 924 So.2d 303, *writ denied*, 06-1052 (La. 11/3/06), 940 So.2d 660, *writ* denied, 08-06 (La. 1/30/09), 999 So.2d 751, the fifth circuit found the element of force was present even though the fourteen year old victim did not actively resist the rape. While discussing whether there was sufficient evidence of force, the fifth circuit stated:

> In a similar case, *State v. Wright*, 598 So.2d 561, 565, (La.App. 4th Cir.1992), *writ denied,* 93-2502 (La. 3/22/96), 669 So.2d 1227; *writ denied*, 98-1474 (La. 10/16/98), 726 So.2d 410, our brethren on the Fourth Circuit affirmed the forcible rape conviction where the evidence showed the 13-year-old victim was prevented by force or threats from resisting sexual intercourse based on the victim's testimony that she considered the defendant to be an adult and not a playmate, that she was told by defendant to accompany him to another room, that the defendant touched and kissed her all over, that he attempted to raise her clothes, that he climbed on top of her and held her arms over her head. The victim also testified that the defendant told her to stop moving, that she was angering him when she attempted to push him away, and that she was too scared to fight the defendant.
>
> The *Wright* court cited a case by this Court in support of its conclusion, *State v. Hawkins*, 504 So.2d 1132, 1133 (La.App. 5th Cir. 1987). In *Hawkins*, the defendant was convicted of forcible rape, primarily on the testimony of his 13-year-old victim. The victim testified that the defendant forced him to go inside of the defendant's apartment where, the defendant locked the door, undressed the youth, and sodomized him. Trial testimony revealed that the victim was afraid, tried to escape, but couldn't move because the defendant was on top of him. He also testified that he did not encourage the defendant or consent to the act.
>
> In *State v. Wright, supra,* the court pointed out that the evidence regarding the element of force and the subjective state of mind of the victim, as in *Hawkins*, when viewed together with all

4

of the other evidence, was sufficient to support the defendants' convictions of forcible rape. *Id.* at 565.

> In the instant case, the Defendant, whom A.R. referred to as her neighbor's paw-paw, used his position of authority and his size to accomplish sexual intercourse with her. A.R. knew the Defendant carried a knife on his person and in fact, a knife disguised as a belt buckle was found on him during booking. A.R. repeatedly said that she was afraid of the Defendant. Further, her statement to Detective Beyerback indicates that she repeatedly told the Defendant to stop, to no avail. Viewed in the light most favorable to the prosecution, we find that the State proved the essential elements of forcible rape beyond a reasonable doubt. This assignment of error lacks merit.

*Id.* at 312-13(footnote omitted).

In the current case, Defendant argues in brief that the victim "testified only that the Defendant pulled down her pants. She did not testify that he forced her pants down or that he used any force whatsoever." The victim, however, twice told him no when he asked her for a hug. She testified that she pulled her pants back up three times in order to prevent him from completing his intent. Moreover, when she tried to leave the office, he turned her around and walked her back to the sofa. While the victim testified she never said no to him, it was apparent from her actions that she was not at all complicit. Further, he was an adult, a caregiver, and an employer. With regards to the element of force, the reasonable belief of the victim that resistance is futile must be viewed subjectively from the victim's perspective. *See State v. Wright,* 598 So.2d 561 (La.App. 4 Cir. 1992), *writ denied*, 93-2502 (La. 3/22/96), 669 So.2d 1227, and *writ denied*, 98-1474 (La. 10/16/98), 726 So.2d 410.

As in *Wright,* discussed above, the victim felt compelled to not cry out as the sexual abuse occurred. She testified that she and her brother and sister spent a lot of time at Defendant's restaurant. She stated that she had liked being at

the restaurant and liked Defendant, and that when she was in the restaurant, he was in charge and she listened to him.

Christa Billeaud, a Sexual Assault Nurse Examiner (SANE), with the Hearts of Hope Assault Nurse program, was qualified as an expert sexual assault examiner. She examined the victim the next night after the assault. She testified that her examination revealed injuries in the form of lacerations to the anus and into the anal canal consistent with injuries caused by forced anal penetration.

The evidence regarding the element of force and the subjective state of mind of the victim, when viewed together with all of the evidence, was sufficient to support the conviction for forcible rape beyond a reasonable doubt.

### ASSIGNMENT OF ERROR NUMBER ONE

Defendant asserts the trial court erred when it questioned some of the prospective jurors during *voir dire* out of the presence of Defendant. Defendant cites La.Code Crim.P. art. 831(3) which provides that a defendant shall be present "[a]t the calling, examination, challenging, impaneling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror." He argues that there is nothing in the statute which allows an attorney to waive his client's presence. However, in *State v. Broaden*, 99-2124, (La. 2/21/01), 780 So.2d 349, *cert. denied,* 534 U.S. 884, 122 S.Ct. 192 (2001), the supreme court found that while a defendant has a right to be present, it may be waived and a contemporaneous objection may be required.

Five prospective jurors were questioned about personal private issues outside Defendant's presence. A sixth prospective juror was questioned outside of both defense counsel's and the State's presence in the judge's chambers.

6

However, prior to these sessions, the trial court specifically addressed the issue of Defendant's presence, and defense counsel waived his presence.

After meeting with the prospective jurors, the trial court advised trial counsel and the State of the juror's issues and without objection one was excused by the trial court. Of the other five prospective jurors, three were challenged for cause without objection and excused. Defendant was present and consulted with his attorney during the challenge conference.

There is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant asserts the trial court erred when it permitted a police officer to testify that Defendant asserted his right to remain silent after he was arrested and argues that defense counsel erred when he did not object to the question. At trial, Detective Stephen Bajat commenced his testimony with a summary of the investigation into the allegation of forcible rape made against Defendant:

Q. And did you have an opportunity to speak with Mr. Dalcourt?

A. He refused to provide a statement.

The fifth circuit recently discussed a defendant's post-arrest right to remain silent in *State v. Pierce,* 11-320, pp. 7-8 (La.App. 5 Cir. 12/29/11), 80 So.3d 1267, 1272-73 as follows:

> It is well settled that a prosecutor cannot make reference to the fact an accused exercised his constitutional right to remain silent, after he had been advised of the right, solely to ascribe a guilty meaning to his silence or to undermine, by inference, an exculpatory version related by the accused, for the first time at trial. *State v. Olivieri,* 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 213. But, the State may pursue a line of questioning that attempts to summarize the extent of the investigation, when such questions are not designed to exploit the defendant's failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense. *Id.* An oblique and obscure reference to a defendant's post-arrest silence, where the examination does not stress the right to remain silent or attempt to

7

elicit testimony regarding the defendant's failure to respond to police questioning does not constitute reversible error. *State v. Robinson*, 04-964 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1126.

Under La.C.Cr.P. art. 771, when the prosecutor or a witness makes a reference to a defendant's post-arrest silence, the trial court is required, upon the request of the defendant or the State, to promptly admonish the jury. In such cases where the trial court is satisfied that an admonition is not sufficient to assure the defendant a fair trial, the court may grant a mistrial upon motion of the defendant. *State v. Robinson*, 896 So.2d at 1126, citing *State v. Kersey*, 406 So.2d 555, 559 (La.1981). A brief reference to a defendant's post-arrest silence does not mandate a mistrial or reversal when the trial as a whole was fairly conducted, the proof of guilt is strong, and the prosecution made no use of the silence for impeachment purposes. *Id.*

In the current case, Defendant did not object to the statement; accordingly, the issue is not subject to an appeal. Louisiana criminal procedure requires a contemporaneous objection in such cases, unless the error was so fundamental as to deprive a defendant of a fair trial. La.Code Crim.P. art. 841, *State v. Arvie,* 505 So.2d 44 (La.1987).

Defendant argues that trial counsel's failure to object "represents ineffective assistance of counsel on its face. Because this case rested largely on the believability of the alleged victim, the State cannot show beyond a reasonable doubt that this error was harmless." However, we note that any objection at that point would have made an issue of the fact, and trial counsel may well have decided not to object for that reason. Since this may be an issue of trial strategy, review should be handled through post-conviction relief, wherein an evidentiary hearing may be held to determine whether trial counsel's actions constituted ineffective assistance. La.Code Crim.P. art. 930, *State v. Rios,* 44,132 (La.App. 2 Cir. 4/8/09), 7 So.3d 832.

## ASSIGNMENT OF ERRORS NUMBERS THREE AND FOUR

In these two assignments of error, Defendant asserts that the trial court erred when it denied his motions to continue the sentencing hearing and for a new trial. Defendant was convicted on December 3, 2010. A date for sentencing was not set until the trial court received the presentence investigation report. Defendant filed a *pro-se* "Petition for Trial Transcripts," wherein he alleged he could no longer afford retained counsel and that he needed the transcripts for the purpose of an appeal. The petition was denied.

Later, Defendant's trial and appellate counsel filed motions to continue sentencing pending receipt of transcripts on a motion for new trial. Appellate counsel argued that a trial transcript was necessary because "the defendant's undersigned counsel did not participate in the trial. However, after he spoke to the Defendant, he realized that the Defendant did not have an opportunity to present his defense and believes the Defendant has good grounds for a new trial." This latter motion was extensive and detailed as to what injustices allegedly occurred in Defendant's case at trial. Both trial counsel and appellate counsel argued that the continuance was necessary. The State argued that Defendant had two and one-half months to prepare for the new trial hearing and objected to a continuance of the sentencing hearing. The trial court denied the motions to continue and ordered appellate counsel to proceed on the motion for new trial.

Defendant argues in brief that the trial court erred when it refused to continue the sentencing date. He points to La.Code Crim.P. art. 853, which, in pertinent part, provides:

> A motion for a new trial must be filed and disposed of before sentence. The court, on motion of the defendant and for good cause shown, may postpone the imposition of sentence for a

9

specified period in order to give the defendant additional time to prepare and file a motion for a new trial.

The trial court has discretion in granting a continuance. La.Code Crim.P. art. 712. "The denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice." *State v. Bartley*, 03-1382, p. 5 (La.App. 5 Cir. 3/30/04), 871 So.2d 563, 567, *writ denied,* 04-1055 (La. 10/1/04), 883 So.2d 1006.

Appellate counsel argued that he needed the continuance in order to receive the trial transcript so that he could prepare the motion for new trial. At trial, the victim's mother testified that after the victim told her about the rape, her ex-boyfriend, John Sampy, called 911 first, then called Defendant and told him they were on their way to the hospital with the victim and "he wanted to let him know that the authorities were going to be contacting him shortly." The gist of the motion for new trial was that Sampy convinced the victim to say Defendant raped her in order to extort money, and that Defendant told counsel of this prior to trial, and counsel did not pursue the issue.

At the hearing, appellate counsel told the trial court that he had initially enrolled to handle Defendant's appeal, but he realized that Defendant had been deprived of a defense because trial counsel erroneously told him the information regarding the extortion attempt was inadmissible evidence. Therefore, trial counsel had a conflict with bringing a motion for new trial based on that information himself, and appellate counsel had to then pursue the new trial motion.

The issue raised by appellate counsel raises ineffective assistance of counsel. As observed in the previous assignment, there may be issues of trial

10

strategy. Appellate counsel's allegations are more appropriate for the post-conviction relief process.

The trial court did not abuse its considerable discretion when it denied Defendant's motion to continue the sentencing hearing. Moreover, the allegations about involvement did not constitute grounds for a new trial as they were not "new evidence," since Defendant alleged that he told trial counsel about Sampy before trial. Therefore, we also find there was no error in the trial court's denial of the motion for new trial, and Defendant has failed to show prejudice because of the denial. The trial court is vested with almost unlimited discretion to grant or deny a motion for new trial to serve the ends of justice, and its decision should not be interfered with unless there has been a palpable abuse of that discretion. *State v. Guillory*, 10-1231 (La. 10/8/10), 45 So.3d 612.

## ASSIGNMENT OF ERROR NUMBER FIVE

Defendant asserts that the "State had exculpatory evidence and knew or should have known of its existence but failed to disclose that evidence before trial." The exculpatory evidence Defendant argues the State failed to disclose is:

1) The name and the location of the mother's ex-boyfriend, John Sampy, who Defendant alleges tried to extort money to "take care" of the rape claim made by the victim.

2) School records of the victim requested by the trial court prior to sentencing which indicated that the victim was susceptible to manipulation.

3) The police statement of the victim's brother, I.F., which was written by John Sampy for I.F.

The Defendant also contends the State failed to notify him that the sexual assault nurse who examined the victim would testify as an expert witness and not as a fact witness and that she was paid by the State to do so.

### *Mother's ex-boyfriend, John Sampy:*

During Defendant's motion to continue/new trial hearing, trial counsel testified that despite repeated requests for the name and location of the mother's ex-boyfriend who allegedly attempted to extort money from Defendant, the first time he learned his name was at trial. However, as noted by the State, the record before this court is "void of any request wherein the Defendant advised the State that he wanted to know the name of the victim's mother's ex-boyfriend."

### *Victim's school records:*

After conviction, the trial court asked the State to obtain the victim's school record. Defendant was informed of the record during the motion to continue/new trial hearing. After trial counsel had the opportunity to review the record, he noted that the record indicated the victim was "weak in the area of manipulation." In brief to this court, Defendant argues that "[t]his evidence was not available to the appellant before the trial, and even the prosecutor said she learned of that evidence only on the sentencing date."

The State, however, argued that it did not have these records prior to or during trial and only obtained them upon request of the trial court after the conviction. The State noted that Defendant could have subpoenaed the victim's school records at any time prior to trial himself.

### *Statement written by Mr. Sampy for I.F.:*

Defendant asserts that he "learned for the first time during the testimony of [I.F.] that 'the moma's boyfriend's name was John Sampy,' and the

boyfriend had written the statement for that witness." At trial, trial counsel asked I.F. if he knew a man named John Sampy and I.F. testified that Sampy was his mother's ex-boyfriend. When asked by trial counsel what statements he had read to get ready for trial, I.F. stated that he "read the one that I.F. told Mr. Sampy, he wrote it down."

At the continuance/new trial hearing, trial counsel testified that had he known the ex-boyfriend had written the statement for the witness, he "would have issued a subpoena for him to attend the trial and he would have run a background check on the boyfriend." Again, trial counsel asserted the State failed to give him exculpatory evidence, although, at the hearing, the State pointed out that it had supplied the witness's statement attached to the police reports pursuant to a discovery request. Trial counsel agreed he received the discovery.

### *Sexual assault nurse as expert witness:*

Defendant argues that the State failed to disclose inculpatory expert opinion. As noted by the State, at the time of the SANE nurse's examination by the State, Defendant made no objection to Ms. Billeaud being qualified as an expert in sexual assault cases. In fact, after extensively traversing the witness, Defendant specifically accepted her as an expert witness in the field of sexual assault nursing. Furthermore, Defendant fails to establish how the fact that she was going to testify as an expert, if disclosed to the defense, would have changed the outcome of the proceeding or created a reasonable doubt that did not otherwise exist.

In *State v. Harper,* 10-356, pp. 10-12 (La. 11/30/10), 53 So.3d 1263, 1270-71, the supreme court reaffirmed the legal standards relative to the State's discovery obligations, in pertinent part, as follows:

A defendant's request for such material must be specific and relevant. *State v. Davenport,* 399 So.2d 201, 202-03 (La.1981). Where a specific request is made and "the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge." *Agurs,* 427 U.S. at 106, 96 S.Ct. at 2399; [*State v.*] *Ates,* 418 So.2d [1326] at 1328 [(1982)]. To determine the nature of the requested material, the trial court may conduct an *in camera* inspection. La.Code Crim. Proc. art. 718; [*State v.*] *Cobb,* 419 So.2d [1237] at 1241[(La.1982)]; *Ates,* 418 So.2d at 1328-29. A defendant will nevertheless be denied such an inspection where the State has denied possession of the specific information requested and the defendant has made no contrary showing. *Cobb,* 419 So.2d at 1241; *Davenport,* 399 So.2d at 203.

. . . .

Nevertheless, the State's constitutional obligation to disclose exculpatory evidence does not relieve the defense of its obligation to conduct its own investigation and prepare a defense for trial as the State is not obligated under *Brady* or its progeny to furnish defendant with information he already has or can obtain with reasonable diligence. *State v. Kenner,* 05-1052, p. 2 (La.12/16/05), 917 So.2d 1081, 1081 (citing *United States v. Newman,* 849 F.2d 156, 161 (5th Cir.1988)); *see also, Michigan v. Harvey,* 494 U.S. 344, 348, 110 S.Ct. 1176, 1179, 108 L.Ed.2d 293 (1990) ("The essence of [defendant's] right [to assistance of counsel for his defense] ... is the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial."). It follows, therefore, " '[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose.'" *State v. Hobley,* 98-2460, p. 25 n. 10 (La.12/15/99), 752 So.2d 771, 786 (quoting *Coe v. Bell,* 161 F.3d 320, 344 (6th Cir.1998)), *cert. denied,* 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000). As the United States Fifth Circuit Court of Appeal has noted:

> Regardless of whether the request was specific or general, and regardless of whether the evidence was material or even exculpatory, when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim.

> The constitutional requirement of due process mandates that the defendant have a right to a fair trial. The prosecutor's duty not to suppress material

> information favorable to defendant flows from his office as representative of the Government's interest in and due process obligation to justice. Truth, justice, and the American way do not, however, require the Government to discover and develop the defendant's entire defense.... In no way can information known and available to the defendant be said to have been suppressed by the Government.

*United States v. Brown,* 628 F.2d 471, 473 (5th Cir.1980) (citations omitted).

In the current case, the name of the man who was the victim's mother's ex-boyfriend, the man who allegedly attempted to extort from Defendant, was available to Defendant upon due diligence. There is nothing in the discovery record before this court to indicate defense counsel ever made the effort to get this information from the State or from any of the other witnesses. He failed to ask the victim's mother when he had the opportunity to do so prior to trial. As noted during Defendant's continuance/new trial hearing, the State repeatedly offered open file discovery but he declined to avail himself for the reason:

> I generally do not do open file discovery because it ends up in a he-said/she-said argument, or potential for a he-said/she-said argument between defense counsel and the State's attorney.

However, trial counsel admitted he was aware that whenever he chose, he had open file discovery available.

We find it curious that while appellate counsel argues that the State's failure to disclose exculpatory information regarding the victim's mother's ex-boyfriend was damaging to Defendant's defense, Defendant never revealed the extortion attempt to the police in the first place. At the continuance/new trial hearing, when asked why, trial counsel answered, "He had been arrested for forcible rape and you expect me to give him advice to go and talk to the police about an extortion?" Had Defendant done so, the necessity of seeking information about Mr. Sampy would have been brought to the forefront.

15

Finally, even though the State did not have the victim's school records until after the conviction and, thus, could not have disclosed them, Defendant made no effort to subpoena records himself. Considering that the victim had accused Defendant of forcible rape and there were no witnesses to the act, her credibility was at issue. It might have been prudent to have had more information regarding the victim.

For all of the above reasons, there is no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER SIX**

Defendant argues that the trial court erred when it did not permit the jury to have a copy of the transcription of the victim's statement to the police. Defendant argues that the transcript shows how her statement was manipulated by the interviewing officer, Detective Stephen Bajat, an investigator with the Lafayette Police Department. During deliberations, the jury requested a copy of the transcript. The trial court denied the request pursuant to La.Code Crim.P. art. 793.

"The general rule as expressed by La.C.Cr.P. art. 793 is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document." *State v. Ray,* 577 So.2d 354, 357 (La.App. 1 Cir.), *writ denied,* 580 So.2d 668 (La.1991), *citing State v. Perkins*, 423 So.2d 1103, 1109 (La.1982) and *State v. Rodriguez*, 476 So.2d 503, 508 (La.App. 1 Cir. 1985).

Defendant asserts that the jury sought the document because, during closing argument, trial counsel told them they should ask to see that transcript so they can see how the police officer was not being objective or open-minded or trying to find facts when he questioned the alleged victim. Rather, he was

asking leading questions that suggested the correct answers in order to clarify inconsistencies in her statements.

At trial, defense counsel extensively crossed-examined the detective regarding his interview with the victim. The jury was well informed of the questions the detective asked and how the victim answered. In *State v. Tammetta*, 624 So.2d 433 (La.App. 5 Cir. 1993), referring to La.Code Crim.P. art. 793, the fifth circuit could not say it was harmless error when four sexual abuse victims' written statements were given to the jury during deliberations. For this reason, among others, the fifth circuit reversed the defendant's convictions. In the current case, Defendant argues the jury required a copy of the transcript to examine the detective's interrogation techniques. However, to have allowed the transcript to be re-read could have led to reversible error. The trial court did not err when it denied the request.

**ASSIGNMENT OF ERROR NUMBER EIGHT**

Defendant's final argument is that the trial court erred when it held the sentencing hearing immediately after it denied his motion for a new trial rather than waiting three days as required by La.Code Crim.P. art. 873. In this case, any error would be harmless since Defendant does not argue excessiveness of his sentence on appeal and does not show he was prejudiced by the lack of delay. *State v. Roberson,* 06-1568 (La.App. 3 Cir. 5/2/07), 956 So.2d 736, *writ denied,* 07-1243 (La. 12/14/07), 970 So.2d 531. *See also State v. Shepherd*, 02-1006 (La.App. 3 Cir. 3/5/03), 839 So.2d 1103.

**DECREE**

Defendant's conviction for forcible rape is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules—Courts of Appeal, Rule 2–16.3.